Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| Julio Cruz Olmo, Marta M. Sánchez Santiago y la Sociedad Legal de Gananciales Compuesta por Ambos<br><br>Recurridos<br><br>vs<br><br>César Manuel Pérez Morales, Lydia Zoraida Merced Hernández y la Sociedad Legal de Gananciales Compuesta por Ambos<br><br>Peticionarios | KLCE202400461 | **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2023CV02539<br><br>Sobre: Ejecución de Hipoteca por la vía ordinaria y Cobro de Dinero |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Rivera Colón, Juez Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 14 de mayo de 2024.

Comparece ante nos el señor César Manuel Pérez y la señora Lydia Zoraida Merced Hernández (en conjunto, peticionarios), quienes presentan recurso de *Certiorari* en el cual solicitan la revisión de la "Orden" emitida el 1 de marzo de 2024,[1] por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI). Mediante el referido dictamen, el foro primario declaró No Ha Lugar a la "Moción de Desestimación por Ausencia de Jurisdicción"[2] presentada por los peticionarios.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración,

---

[1] Notificada el 4 de marzo de 2024.
[2] "Moción de Desestimación por Ausencia de Jurisdicción el Acreedor no ha cumplido con RESPA ni con la Ley de Ayuda al Deudor Hipotecario"

Número Identificador
SEN2024_____

expedimos el auto de *Certiorari* y confirmamos la "Orden" recurrida, por los fundamentos que expondremos a continuación.

## I.

El 28 de julio de 2023, el señor Julio Cruz Olmo, la señora Marta M. Sánchez y la Sociedad Legal de Gananciales por ellos compuesta (en conjunto, recurridos) presentaron una "Demanda" en cobro de dinero y ejecución de hipoteca contra los peticionarios. Alegaron que, el 27 de agosto de 2009, se suscribió un pagaré hipotecario por la suma principal de $212,000.00, sin intereses, a favor del portador, garantizando una suma equivalente al 10% del principal adeudado para honorarios de abogado. Sostuvieron que, para garantizar el pagaré hipotecario, el 27 de agosto de 2009, se constituyó una segunda hipoteca que gravó la residencia de los peticionarios, ubicada en el Bo. Navarro, Gurabo, Puerto Rico. Arguyeron que, los peticionarios incumplieron con su obligación de pagar en un año a partir de la inscripción de la hipoteca, la cual fue inscrita el 20 de julio de 2017. Por ende, los recurridos solicitaron que, tanto el bien hipotecado como el pagaré hipotecario, fueran ejecutados. En especial solicitaron que el inmueble fuera vendido en pública subasta, y que las sumas adeudadas a la parte demandante le sean satisfechas con el producto de la venta de dicho inmueble.

Tras varios trámites procesales impertinentes a la controversia, el 19 de octubre de 2023, los peticionarios presentaron una "Moción de Desestimación por Ausencia de Jurisdicción".[3] En esencia, argumentaron que el Tribunal carecía de jurisdicción sobre la controversia debido a que los recurridos no enviaron la notificación de incumplimiento, y tampoco los orientaron sobre las alternativas de mitigación de pérdidas previo a incoar la "Demanda".

---

[3] "Moción de Desestimación por Ausencia de Jurisdicción el Acreedor no ha cumplido con RESPA ni con la Ley de Ayuda al Deudor Hipotecario"

Por su parte, el 16 de noviembre de 2023, los recurridos presentaron una "Moción en Oposición a la Solicitud de Desestimación", y alegaron que, en vista de que éstos son personas particulares y no una institución bancaria, no les aplicaban las disposiciones legales esbozadas por los peticionarios.

Evaluados los escritos presentados por ambas partes, el 4 de marzo de 2024, el TPI emitió una "Orden" donde declaró No Ha Lugar a la "Moción de Desestimación por Ausencia de Jurisdicción".[4] Inconformes, el 18 de marzo de 2024, los recurridos solicitaron "Reconsideración" del dictamen. Posteriormente, el 27 de marzo de 2024, los recurridos presentaron una "Moción en Oposición a la Reconsideración de la Orden del 4 de marzo de 2024".

Evaluadas las mociones presentadas, el 1 de abril de 2024, el foro *a quo* emitió una "Orden" en la cual dictaminó No Ha Lugar a la "Reconsideración". Insatisfechos con dicha determinación, los peticionarios recurren ante este foro apelativo intermedio y alegan la comisión del siguiente error, a saber:

> *Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la Solicitud de Desestimación por incumplimiento con el Real Estate Settlement Procedures Act, 12 USC sec. 2601 y la Ley de Ayuda al Deudor Hipotecario, Ley Núm. 169 del 9 de agosto de 2016, 32 LPRA sec. 2891.*

**II.**

**-A-**

La jurisdicción se ha definido como el poder o la autoridad que tiene el tribunal para considerar y decidir casos o controversias. *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 267 (2018); *Yumac Home v. Empresas Massó,* 194 DPR 96 (2015), 103; *Horizon Media v. Jta. Revisora, RA Holdings,* 191 DPR 228, 233 (2014). Tanto los foros de instancia, como los foros apelativos, tienen el deber de analizar de forma prioritaria si poseen jurisdicción para atender las

---

[4] "Moción de Desestimación por Ausencia de Jurisdicción el Acreedor no ha cumplido con RESPA ni con la Ley de Ayuda al Deudor Hipotecario"

controversias presentadas ante su consideración, debido a que los tribunales estamos llamados a ser fieles guardianes de nuestra jurisdicción, incluso cuando ninguna de las partes invoque tal defecto. *Ruiz Camilo v. Trafon Group, Inc., supra,* a la pág. 268; *Shell Chemical v. Srio. Hacienda,* 187 DPR 109, 122-123 (2012).

Lo expuesto anteriormente responde a que las cuestiones jurisdiccionales son materia privilegiada y deben resolverse con preferencia a los asuntos restantes. Nuestro Máximo Foro ha reiterado que, evaluar los aspectos jurisdiccionales son parte de nuestro deber ministerial y debe hacerse antes de que el tribunal pueda conocer del pleito. *Ruiz Camilo v. Trafon Group, Inc., supra,* a la pág. 268. Por consiguiente, "si un tribunal carece de jurisdicción, solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la controversia". *Mun. San Sebastián v. QMC Telecom, O.G.P.,* 190 DPR 652, 659 (2014)

"La jurisdicción sobre la materia se refiere a la capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal". *Shell v. Srio. Hacienda,* 187 DPR 109, 122 (2012). Cuando el tribunal carece de jurisdicción sobre la materia, se enfrenta a las siguientes consecuencias:

> *(1) no es susceptible de ser subsanada; (2) las partes no pueden otorgar voluntariamente al tribunal jurisdicción sobre la materia ni el tribunal puede arrogársela; (3) los dictámenes de un foro sin jurisdicción sobre la materia son nulos (nulidad absoluta); (4) los tribunales tienen el deber ineludible de auscultar su propia jurisdicción; (5) los tribunales apelativos deben examinar la jurisdicción del foro de donde procede el recurso, y (6) un planteamiento de falta de jurisdicción sobre la materia puede hacerse en cualquier etapa del procedimiento por cualesquiera de las partes o por el tribunal motu proprio.* Íd, a la pág 122*; Aguadilla Paint Center v. Esso,* 183 DPR 904, 931 (2011).

**-B-**

En el 2010, el Congreso de los Estados Unidos aprobó el "Dodd Frank Wall Street Reform and Consumer Protection Act" 12 USC sec. 5301 con el fin de fomentar la estabilidad financiera de los

Estados Unidos y la transparencia del sistema financiero. La exposición de motivos del precitado estatuto establece lo siguiente:

> *"An Act to promote the financial stability of the United States by improving accountability and transparency in the financial system, to end "too big to fail", to protect the American taxpayer by ending bailouts, to protect consumers from abusive financial services practices, and for other purposes".*

Por su parte, se creó el "Consumer Financial Protection Bureau" (CFPB), una agencia federal a la cual se le delegó la autoridad para regular todo lo concerniente a la protección de los consumidores frente al sector financiero.[5] Como parte de la autoridad general delegada, la CPFB estaría a cargo de reglamentar, supervisar y hacer cumplir las disposiciones del "Real Estate Settlement Procedures Act", conocida como "RESPA", 12 USC 2601 *et seq.* Para implementar las disposiciones consignadas en "RESPA", se creó el "Mortage Rules Under the Real Estate Settlement Procedure Act" (Reglamento X), 78 Fed. Reg. 44686. El 10 de enero de 2014 el CFPB incluyó en el "Reglamento X" algunas reglas referentes al proceso de "*loss mitigation*" o mitigación de pérdidas de deudores hipotecarios. Estas enmiendas disponen detalladamente la presentación y evaluación de las solicitudes de mitigación de pérdidas.[6] Consecuentemente, regulan el proceso interno de mitigación de pérdidas que debe establecer cada banco o entidad financiera respecto a sus clientes en casos de que se trate de una residencia principal. A su vez, "RESPA" y el "Reglamento X" exigen ciertos deberes para que el deudor tenga la oportunidad de ser considerado por el banco o la entidad financiera y, de cualificar, proceder a evaluar las opciones disponibles para evitar que la parte deudora pierda su residencia debido a la falta de pago.

---

[5] Véase, 12 USC secs. 5481, 5514 y 5515.
[6] Véase, 76 FR 78978; 78 FR 106696; 78 FR 44686; y 78 FR 39902.

"RESPA" aplica a los préstamos conocidos como "Federally Related Mortgage Loans", 12 CFR 1024. 5 (a). La ley los define como:

*Loans (other than temporary loans), including refinancings that satisfy the following two criteria:*
*First, the loan is secured by a first or subordinate lien on residential real property, located within a State, upon which either;*

*A one-to-four family structure is located or is to be constructed using proceeds of the loan (including individual units of condominiums and cooperatives); or*
*A manufactured home is located or is to be constructed using proceeds of the loan.*

*Second, the loan falls within one of the following categories:*

*Loans made by a lender[7], creditor[8], dealer[9];*
*Loans made or insured by an agency of the federal government;*

*Loans made in connection with a housing or urban development program administered by an agency of the federal government;*

*Loans made and intended to be sold by the originating lender or creditor to FNMA, GNMA, or FHLMC (or its successor)[10]; or*

*Loans that are the subject of a home equity conversion mortgage or reverse mortgage issued by a lender or creditor subject to the regulation.*

*"Federally related mortgage loans" are also defined to include installment sales contracts, land contracts, or contracts for deeds on otherwise qualifying residential property if the contract is funded in whole or in part by proceeds of a loan made by a lender, specified federal agency, dealer or creditor subject to the regulation.*

Por otro lado, el termino de acreedor se define en la Sec. 103(g) de la Ley de Protección del Crédito al Consumidor 15 USC 1602(g) de la siguiente manera:

*The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is*

---

[7] A lender includes financial institutions either regulated by, or whose deposits or accounts are insured by any agency of the federal government
[8] A creditor is defined in Sec. 103(g) of the Consumer Credit Protection Act (15 USC 1602(g)). RESPA covers any creditor that makes or invests in residential real estate loans aggregating more than $1,000,000 per year.
[9] Dealer is defined in Regulation X to mean a seller, contractor, or supplier of goods or services. Dealer loans are covered by RESPA if the obligations are to be assigned before the first payment is due to any lender or creditor otherwise subject to the regulation.
[10] FNMA – Federal National Mortgage Association; GNMA - Government National Mortgage Association; FHLMC - Federal Home Loan Mortgage Corporation.

*initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. Notwithstanding the preceding sentence, in the case of an open-end credit plan involving a credit card, the card issuer and any person who honors the credit card and offers a discount which is a finance charge are creditors. For the purpose of the requirements imposed under part D of this subchapter and sections 1637(a)(5), 1637(a)(6), 1637(a)(7), 1637(b)(1), 1637(b)(2), 1637(b)(3), 1637(b)(8), and 1637(b)(10) of this title, the term "creditor" shall also include card issuers whether or not the amount due is payable by agreement in more than four installments or the payment of a finance charge is or may be required, and the Bureau shall, by regulation, apply these requirements to such card issuers, to the extent appropriate, even though the requirements are by their terms applicable only to creditors offering open-end credit plans. Any person who originates 2 or more mortgages referred to in subsection (aa) in any 12-month period or any person who originates 1 or more such mortgages through a mortgage broker shall be considered to be a creditor for purposes of this subchapter. [...]*

**-C-**

La Ley de Ayuda al Deudor Hipotecario, Ley Núm. 169-2016, 32 LPRA sec. 2891, responde a la preocupación de la Asamblea Legislativa sobre la práctica de muchos acreedores hipotecarios de comenzar una reclamación judicial de cobro de dinero y ejecución de hipoteca, mientras el deudor hipotecario se encuentra en el proceso de cualificación para el programa de "*loss mitigation*" o mitigación de pérdidas, práctica a la cual se le denomina como "*dual tracking*". Mediante la aprobación de esta ley, la Asamblea Legislativa manifestó su intención de atender aquellas situaciones que no quedaban resueltas mediante la normativa federal relacionada a los programas de mitigación de pérdidas, particularmente, "RESPA" y "Reglamento X". Tales normativas federales incluyen salvaguardas, para que los deudores hipotecarios puedan ser orientados y considerados para programas de mitigación de pérdidas antes de un proceso de ejecución. De dicha forma, la institución financiera o bancaria, debe realizar un análisis para

determinar si el deudor puede ser beneficiado con estos programas.[11]

Así, la intención legislativa es impedir que, un acreedor hipotecario pueda comenzar algún proceso de demanda de cobro, hasta tanto el proceso de evaluación de mitigación de pérdidas haya terminado. De esta manera, cumplidas las disposiciones de la ley, el acreedor hipotecario deberá detener cualquier trámite legal y brindar asesoría de buena fe, asistiendo al deudor en su solicitud, una vez éste exprese su intención de acogerse a dicho proceso y se complete el proceso de presentación de solicitud de mitigación de pérdidas.[12]

El Art. 2 de la Ley Núm. 169-2016, 32 LPRA sec. 2892, define al acreedor hipotecario de la siguiente manera:

> *Cualquier persona natural o jurídica, ya sea una entidad prestataria o financiera, un banco o una cooperativa, debidamente autorizada por las leyes de Puerto Rico o las leyes de los Estados Unidos de América para conceder, o que conceda, préstamos con garantía hipotecaria sobre una residencia o vivienda principal. También se considerará un acreedor hipotecario el tenedor o portador de un pagaré que contenga un gravamen inmobiliario sobre una residencia o vivienda principal en Puerto Rico. Igualmente, para propósitos de esta Ley, "acreedor hipotecario" incluirá aquellas entidades encargadas de administrar y dar servicios a los acreedores hipotecarios relacionados con préstamo con garantía hipotecaria sobre una residencia o vivienda principal (en inglés servicer).*

> *Por su parte, la ley considera al deudor hipotecario:*

> *a toda "persona natural que ha incurrido en un préstamo de consumo o para propósitos personales garantizado con un gravamen hipotecario sobre su residencia o vivienda principal. Esta definición incluirá a todas las personas naturales que sean contractualmente responsables de la obligación que se intenta hacer efectiva en el procedimiento de cobro o de ejecución de hipoteca". Íd.*

Por otro lado, se considera mitigación de pérdidas cualquier programa que el acreedor hipotecario tenga bajo leyes y reglamentos federales y estatales, que le permitan al deudor realizar un cambio

---

[11] Véase, Exposición de Motivos.
[12] *Íd.*

a su préstamo, ya sea a través de un plan de pago especial, una modificación de hipoteca, un *"short sale"*, una entrega voluntaria, entre otros.[13]

**-D-**

En Puerto Rico se creó la "Ley para Mediación Compulsoria y Preservación de tu Hogar en los procesos de Ejecuciones de Hipotecas de una Vivienda Principal", Ley Núm. 184-2012, 32 LPRA secs. 2881-2886, con el propósito de insertar el proceso de mediación compulsorio entre el acreedor y deudor hipotecario en los procesos de ejecución de Hipoteca de propiedades dedicadas a vivienda. Así, la Ley Núm. 184-2012, *supra*, fue creada con el propósito de proteger la propiedad principal de vivienda en Puerto Rico ante los efectos de la crisis económica que enfrentamos.[14]

En lo concerniente, la Ley Núm. 184-2012, *supra*, define dos conceptos sumamente significativos. Estos son: (1) mediación compulsoria, y (2) residencia o vivienda principal. En cuanto al concepto de mediación compulsoria, el Art. 2(b) de la Ley 184-2012, 32 LPRA sec. 2881, establece que en los casos en que un acreedor pueda iniciar una demanda sobre ejecución de hipoteca "de una propiedad residencial que constituya una vivienda principal, se celebrará una reunión compulsoria de mediación [...]". En particular, específica que el acreedor hipotecario tiene el deber de notificarle al deudor hipotecario todas las alternativas disponibles en el mercado, con el fin de "evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal". *Íd.* Así, la ley puntualiza que, el objetivo de la mediación compulsoria es llegar a un acuerdo que permita al deudor hipotecario "establecer un acuerdo de pago u otra alternativa satisfactoria a las partes y no perder su vivienda principal". *Íd.* En

---

[13] *Íd.*
[14] Véase, Exposición de Motivos.

cuanto al segundo concepto, el Art. 2(e) de la Ley 184-2012, *supra*, define residencia o vivienda principal como "aquella que se utiliza como el hogar principal del deudor o del deudor y su familia inmediata; y que para fines contributivos sobre bienes inmuebles es aquella para la cual aplicaría la exención contributiva principal".

La jurisprudencia ha resuelto que, la mediación compulsoria es un requisito jurisdiccional y, consecuentemente, si no se cumple con este requisito no podrá dictarse sentencia, ni ordenarse la venta judicial de un inmueble que se utiliza como residencia principal. *Bco. Santander v. Correa García*, 196 DPR 452, 457 (2016). Es decir, una propiedad residencial que constituya una vivienda personal del deudor. *Scotiabank v. SLG Rosario-Castro*, 205 DPR 537,550 (2020). Por ello, el tribunal tiene la obligación de referir el caso a mediación compulsoria en, "todos los casos en los que se solicite la ejecución de un inmueble que se utiliza como residencia principal, salvo en aquellos casos en los que el deudor se encuentre en rebeldía o cuando el tribunal haya eliminado sus alegaciones". *Bco. Santander v. Correa García, supra*, a la pág. 475.

### III.

En el caso de autos, los peticionarios plantean que, el TPI no tiene jurisdicción para evaluar la controversia presentada por los recurridos. Alegan que, como la hipoteca está garantizada por una residencia principal, los recurridos debieron enviar una notificación de incumplimiento y haberlos orientado sobre las alternativas de mitigación de pérdidas previo a incoar la "Demanda". Alegan que, según la situación de hechos del presente caso, son aplicables la "RESPA" y la "Ley de Ayuda al Deudor Hipotecario". Sin embargo, tras analizar las disposiciones legales esbozadas, concluimos que no están presentes los fundamentos en los cuales los peticionarios sostienen su reclamo para desestimar la "Demanda".

En primer lugar, los recurridos son personas naturales privadas. La "RESPA" y "La Ley de Ayuda al Deudor Hipotecario" guardan silencio con respecto a las relaciones entre personas particulares. Dichas disposiciones son de aplicabilidad solamente a instituciones financieras.

El Congreso de los Estados Unidos ha creado los cimientos de la Ley "Dodd Frank Wall Street Reform and Consumer Protection Act", el "Consumer Financial Prtection Bureu", la "RESPA" y el "Reglamento X", en la protección del consumidor frente al sector financiero, y no se interpone en las obligaciones entre personas privadas. Aunque, la "Ley de Ayuda al Deudor Hipotecario" amplió las garantías del "Reglamento X", ésta no contempla a personas particulares. Tampoco amplió el significado de "Federally Related Mortgage Loans". 12 CFR 1024. 5 (a), *supra.* Somos del criterio que, en el caso de autos, el préstamo realizado por los peticionarios no cae dentro de la definición de "Federally Related Mortgage Loans".[15] A su vez, los recurridos no pueden ser denominados acreedores hipotecarios debido a que, no se consideran "lender", "creditor" o "dealer", según definidas en 12 CFR 1024. 5 (a), *supra* y la Ley de Protección del Crédito al Consumidor, 15 USC 1602(g).

Por otra parte, el procedimiento de solicitud de mitigación de pérdidas se basa en un documento el cual es preparado por la Oficina del Comisionado de Instituciones Financieras. Por ley, dicha Oficina es la encargada de fiscalizar, reglamentar y supervisar las instituciones financieras que operan en Puerto Rico. La misma no tiene jurisdicción sobre personas particulares, y muchos menos entre transacciones privadas.

Otro factor a considerar es que, el documento o solicitud para comenzar el proceso de mitigación de pérdidas debe estar disponible

---

[15] *Id.*

en formato electrónico y en las Oficinas del Departamento de Mitigación de Pérdidas, o en las sucursales de los acreedores hipotecarios. Evidentemente, una persona particular no tiene una Oficina del Departamento de Mitigación de Pérdidas o sucursales.

A su vez, el Art. 4 la Ley 169-2016, dispone que el acreedor hipotecario tiene la obligación de orientar al deudor hipotecario de las alternativas de mitigación de pérdidas que tendría disponible a nivel federal y a nivel estatal, y de asistirlo en el proceso de completar la solicitud de mitigación de pérdidas de buena fe. En el caso de autos, ambas partes son legos y particularmente al acreedor no se le debe imponer la responsabilidad de orientar sobre complejos procesos bancarios que desconoce y de ayudar al deudor a completar la solicitud.

Si bien es cierto que, "RESPA" y la "Ley de Ayuda al Deudor Hipotecario" no aplican a este caso, no es menos cierto que la "Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal" sí es de aplicación. Como esbozamos anteriormente, dicha ley ordena al tribunal a citar a las partes a una vista de mediación, en los casos en los cuales un acreedor hipotecario inicia un proceso que pueda culminar en la venta judicial de una propiedad residencial que constituya una vivienda principal, esto una vez el tribunal ordene la paralización de los procedimientos.

Luego de considerar el recurso ante nos y a la luz del derecho citado, coincidimos con la determinación del *foro a quo*. El caso que nos ocupa versa de un mero préstamo entre dos partes particulares que no son considerados acreedores financieros, por lo cual no aplican las disposiciones concernientes a la mitigación de pérdidas.

**IV.**

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, expedimos el auto de *Certiorari* y confirmamos la

"Orden" recurrida, emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas. Se devuelve para continuación de los procedimientos.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones